UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY ALVARADO, | Case No. CV 07-5793-JTL |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | |
| Defendant. | |

**PROCEEDINGS**

On September 10, 2007, Henry Alvarado ("plaintiff") filed a Complaint seeking review of the Social Security Administration's denial of his application for Supplemental Security Income benefits. On October 1, 2007, Michael J. Astrue, Commissioner of Social Security ("defendant"), filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. On October 4, 2007, plaintiff filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on February 8, 2008, defendant filed an Answer to the Complaint. On April 16, 2008, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///
///

## BACKGROUND

On August 28, 2004, plaintiff filed an application for Supplemental Social Security Income benefits alleging a disability onset date of January 1, 1991. (Administrative Record ["AR"] at 64-65). In his application, plaintiff claimed that, beginning on January 1, 1991, mental problems and paranoia prevented him from working. (See AR at 44, 77). The Commissioner denied plaintiff's application for benefits upon initial consideration. (AR at 44-45).

On December 23, 2004, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 46). On February 21, 2006, the ALJ conducted a hearing in Los Angeles, California. (AR at 216-50). Plaintiff appeared at the hearing with counsel and testified. (AR at 218-42). Elizabeth Ramos-Brown, a vocational expert, also testified at the hearing. (AR at 242-49). Thereafter, on September 26, 2006, the ALJ issued his decision denying benefits to plaintiff. (AR at 16-31). In his decision, the ALJ determined that, although plaintiff had alleged disability as of January 1, 1991, plaintiff's application for benefits could not be effective until July 21, 2004, the day after the date of the ALJ decision denying plaintiff's previous application for benefits.[1] (AR at 19). The ALJ concluded that plaintiff's depressive disorder with psychotic features, post-traumatic stress disorder and substance abuse disorder constituted severe impairments, but found that plaintiff did not have an impairment or combination of impairments that meet or equal the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (See AR at 22-23). The

---

[1] Petitioner had previously filed an application for Supplemental Social Security Income benefits on March 13, 2003. (See AR at 19, 37). The application was denied initially, and plaintiff timely filed a request for hearing, which was held on May 10, 2004. (See AR at 37). On July 20, 2004, the ALJ issued his decision denying benefits. (AR at 34-42). The ALJ determined that plaintiff suffered from the severe impairments of major depression, a post-traumatic stress disorder, psychotic features and substance addiction disorder, but found that plaintiff did not have an impairment or combination of impairments that meet or equal the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (See AR at 39, 42). The ALJ concluded that plaintiff had the residual functional capacity to perform simple, unskilled, routine and repetitive tasks with minimal contact with others at all exertional levels, and that plaintiff's impairments did not prevent him from performing his past occupations of batch mixer and dock loader. (See AR 41-42). The ALJ ultimately found that plaintiff was not disabled pursuant to the Social Security Act. (AR at 39, 42). The Appeals Council denied plaintiff's request for review of the ALJ's decision. Plaintiff then filed a civil action in this Court, under case number CV 05-2469-JTL. On April 28, 2006, this Court affirmed the ALJ's decision.

ALJ adopted the previous ALJ's decision regarding plaintiff's residual functional capacity, that plaintiff had the residual functional capacity to perform simple, unskilled, routine and repetitive tasks with minimal contact with others at all exertional levels, and concluded that plaintiff can perform simple work with only occasional contact with co-workers and no interaction with the public. (See AR at 23, 29). The ALJ concluded that plaintiff had no "past relevant work" because his past occupations as batch mixer and dock loader had not been performed within the previous fifteen years. (AR at 29-30). However, the ALJ concluded that plaintiff could perform other jobs existing in the national economy, including the occupations of rack loader, paint pourer and hand packager. (AR at 30). Accordingly, the ALJ concluded that plaintiff was not disabled at any time through the date of his decision. (AR at 20, 31). On November 27, 2006, plaintiff requested a review of the ALJ's decision by the Appeals Council, and thereafter submitted additional medical evidence for its consideration. (See AR at 12-15[2], 209-214). The Appeals Council denied plaintiff's request for review of the ALJ's decision on July 12, 2007. (AR at 5-7).

Thereafter, plaintiff appealed to the United States District Court.

**PLAINTIFF'S CONTENTION**

Plaintiff claims that the Appeals Council failed to provide specific and legitimate reasons for rejecting the opinion of plaintiff's treating mental health physician.

**STANDARD OF REVIEW**

Under 42 U.S.C. Section 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial

---

[2] The record includes a "Statement of Claimant or Other Person," in which plaintiff explains that "[t]he reason why we did not turn in our appeal on time was because we were waiting for doctors letters and appointments. It was explained to me that I did not make the cut of time." (AR at 14-15).

evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

## DISCUSSION

**A.     The Sequential Evaluation**

A claimant is disabled under Title II of the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantially gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantially gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 141 (1987). Second, the ALJ must determine whether the claimant has a severe impairment. Parra, 481 F.3d at 746. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Parra, 481 F.3d at 746. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Parra, 481 F.3d at 746. If the claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step

and must determine whether the impairment prevents the claimant from performing any other substantially gainful activity. Parra, 481 F.3d at 746.

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times, the burden is on the claimant to establish his or her entitlement to disability insurance benefits. Id. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

**B.    The Appeals Council's Evaluation of the Supplemental Medical Evidence**

After the ALJ issued his decision denying plaintiff benefits on September 26, 2006, plaintiff requested a review of the decision by the Appeals Council. In connection with his request for review, plaintiff submitted a Mental Impairment Questionnaire (Listings) and Medical Assessment of Ability To Do Work-Related Activities (Mental), prepared by his treating mental health physician, Novellyn Heard, M.D., and dated April 6, 2007. (AR 209-14). Dr. Heard's opinion, as stated in these forms, suggest that plaintiff's mental impairments would substantially impact his ability to function, both socially and occupationally.

In the Mental Impairment Questionnaire, Dr. Heard noted that the highest Global Assessment of Functioning ("GAF") score with which plaintiff had been assessed in the preceding year – presumably between April 2006 and April 2007 – was a GAF score of 50[3],

---

[3] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). A GAF score of 41 to 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th. ed., rev. 2000).

Dr. Heard also noted that plaintiff's current GAF score, at the time she completed the questionnaire, was 40. (AR at 209). See id. (GAF score of 31 to 40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)."). However, because this particular GAF score assessment relates to a period following the date of the ALJ's decision, the Appeal's council did not need to consider it in deciding whether to review the ALJ's decision in light of the new evidence submitted by plaintiff. See discussion infra.

which indicates serious mental symptoms or serious impairments in social or occupational functioning. (See AR at 209). Dr. Heard stated that plaintiff was "[d]epressed, hear[s] voices telling him to jump off the mountain, sees shadows and paranoid ideations, [thinks] that people are out to get hurt [sic] him," and that plaintiff is anxious, suffers from panic attacks, is unable to sit still, cannot focus, and that his "wife has to do everything," including cooking, shopping and paying the bills. (AR at 209). She also indicated that plaintiff exhibited the following signs and symptoms: anhedonia or pervasive loss of interest in almost all activities; decreased energy; impairment in impulse control; generalized persistent anxiety; mood disturbance; paranoid thinking or inappropriate suspiciousness; emotional withdrawal or isolation; perceptual or thinking disturbances; hallucinations or delusions; easy distractibility; memory impairment – short, intermediate or long term; sleep disturbance; and recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week. (AR at 210). With respect to functional limitations resulting from plaintiff's mental impairments, Dr. Heard indicated that plaintiff had "marked" limitations[4] in his activities of daily living and ability to maintain concentration, persistence or pace, "extreme" limitations in his ability to maintain social functioning, and experienced four or more episodes of decompensation within a twelve month period, each episode lasting at least two weeks. (AR at 211). Dr. Heard indicated that plaintiff had a history of chronic organic mental, schizophrenic or affective disorder of at least two years' duration that caused more than a minimal limitation of ability to perform basic work activities and an anxiety related disorder and complete inability to function independently outside the home. (AR at 211-12). Dr. Heard opined that plaintiff's mental impairments would cause him to be absent from work for more than four days per month and had lasted or could

---

[4] In the Mental Impairment Questionnaire, "marked" is defined as "more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired or even when only one is impaired, so long as the degree of limitation is such as to seriously interfere with the ability to function independently, appropriately, effectively, and on a sustained basis." (AR at 211).

be expected to last at least twelve (12) months, plaintiff was not a malingerer, and plaintiff could not manage benefits in his own interest. (AR at 212).

In the Medical Assessment of Ability To Do Work-Related Activities (Mental) form, Dr. Heard assessed plaintiff's ability to perform work-related activities on a daily basis in a regular work setting. (AR at 213-14). Dr. Heard opined that plaintiff had poor or no ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently or maintain attention or concentration. (AR at 213). She further opined that plaintiff had poor or no ability to understand, remember and carry out simple, detailed or complex job instructions, relate predictably in social situations or demonstrate reliability.[5] (AR at 214). According to Dr. Heard, plaintiff's ability to maintain his personal appearance (with supervision) and behave in an emotionally stable manner was fair.[6] (Id.). Dr. Heard noted that plaintiff's wife needed to remind and assist plaintiff in bathing and grooming. (Id.). Dr. Heard stated that plaintiff is "[u]nable to adapt to stresses common to work. He is unable to keep schedules or interact with supervisor appropriately. He is unable to make decisions related to work[.] His symptoms impair daily living and occupational functioning." (AR at 213; see AR at 214). Additionally, Dr. Heard noted that plaintiff "is specially withdrawn. He has paranoid ideations that people are out to get him." (AR at 214).

The Appeals Council considered this new evidence from Dr. Heard, but ultimately denied plaintiff's request to review the ALJ's decision denying benefits. (AR at 5, 8). Specifically, the Appeals Council stated:

> We found that this information does not provide a basis for changing the [ALJ]'s decision. This assessment is inconsistent with the treatment notes from [Dr. Heard]. Dr. Heard's treatment notes indicate that [plaintiff] was consistently alert and oriented

---

[5] Dr. Heard specifically noted that plaintiff had "poor social skills." (AR at 214).

[6] "Fair" is defined as "[a]bility to function in this area is seriously limited, but not precluded." (AR at 213).

|   |   |
|---|---|
| 1 | with concentration within normal limits, and good insight, good |
| 2 | judgment, good reliability, and unimpaired impulse (Exhibit B4F). |

(AR at 6). Plaintiff argues that, as plaintiff's treating mental health physician, Dr. Heard's opinion regarding plaintiff's functional limitations should receive heavy weight. Plaintiff contends that the Appeals Council failed to provide legitimate reasons for rejecting Dr. Heard's opinion and ignored most of the symptoms she described and identified in the Mental Impairment Questionnaire (Listings) and Medical Assessment of Ability To Do Work-Related Activities (Mental). (See Joint Stipulation at 5-8). Defendant, however, argues that the Appeals Council properly considered the forms completed by Dr. Heard, and the ALJ properly considered the evidence in the record in determining that plaintiff had the residual functional capacity to perform simple, unskilled, routine and repetitive tasks with only occasional contact with co-workers and no interaction with the public. (See Joint Stipulation at 8-12).

On appeal, "[t]he Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b) (also stating that "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."). The Appeals Council need not, however, review nor consider new evidence that relates only to a time period after the ALJ issues his decision. See id.; see also id. § 404.976(b)(1) (stating that, on review, "[i]f you submit evidence which does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council will return the additional evidence to you with an explanation as to why it did not accept the additional evidence and will advise you of your right to file a new application."); Bates v. Sullivan, 894 F.2d 1059, 1064 (9th Cir. 1990) ("The Appeals Council shall consider any new and material evidence only where it relates to the period on or before the date of the ALJ's decision."), overruled on other grounds by Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991). New evidence is material if there is a reasonable possibility that it would have changed the outcome

of the ALJ's determination.  See Booz v. Sec'y of Health & Human Servs., 734 F.2d 1378, 1380-81 (9th Cir. 1984).

Here, the Appeals Council considered the new evidence from Dr. Heard (see AR at 5, 8), and did not specifically discount it as unrelated to the period on or before the date of the ALJ's decision denying benefits to plaintiff.  (See AR at 6).  See 20 C.F.R. § 404.970(b).  In denying plaintiff's request for review of the ALJ's decision, however, the Appeals Council determined that the new evidence was immaterial and did not provide a basis for changing the ALJ's decision because Dr. Heard's opinion was inconsistent with her treatment notes.  (See AR at 6).

The Court disagrees with the Appeals Council's determination that the new evidence provided by Dr. Heard in the Mental Impairment Questionnaire (Listings) and Medical Assessment of Ability To Do Work-Related Activities (Mental) was not material, in that it did not provide a basis for changing the ALJ's decision.  First, the Appeals Council's finding that Dr. Heard's assessment was inconsistent with her treatment notes was not a sufficient reason for determining that the new evidence was immaterial in this case.  The Appeals Council based its finding on the fact that Dr. Heard had indicated that plaintiff was alert, his concentration was within normal limits, he exhibited good insight, judgment and reliability, and had unimpaired impulse.  Dr. Heard had initially expressed these opinions in her treatment notes dated February 15, 2005, April 1, 2005, August 17, 2005 and August 31, 2005.  (See AR at 6, 189, 191, 193, 195).  In her more recent assessment in April 2007, however, Dr. Heard opined that plaintiff could not focus, was easily distracted, had poor or no ability to maintain attention or concentration and had "marked" limitations in his ability to maintain concentration (AR at 209-11, 213).  She further opined that plaintiff had poor or no ability to follow work rules, use judgment, understand, remember and carry out simple, detailed or complex job instructions or demonstrate reliability, and had impaired impulse control.  (AR at 213-14).

Upon review of the records, however, the Court finds that Dr. Heard's treatment notes are not so "inconsistent" as to render her more recent assessment of plaintiff's functional capacity immaterial.  Although Dr. Heard circled "CONC. WNL" in her August 17, 2005

treatment notes, Dr. Heard also noted that plaintiff's concentration was poor. (See AR at 191 ("Conc – poor")). Moreover, Dr. Heard's opinion in her April 6, 2007 Mental Impairment Questionnaire (Listings) and Medical Assessment of Ability To Do Work-Related Activities (Mental) – which the Appeals Council apparently determined were related to the period on or before the ALJ's decision – specifically addresses the severity of plaintiff's mental impairments and functional capabilities based on a longer treatment period, and is not limited to her observations of plaintiff on a particular occasion.[7] See, e.g., Morgan, 169 F.3d at 605 (Noonan, J., dissenting) ("depression is a complex and highly idiosyncratic phenomenon that often waxes and wanes, eluding neat description"). Indeed, the new evidence from Dr. Heard suggests that the severity of plaintiff's mental impairments and their impact on his functional capabilities may have worsened between the date of Dr. Heard's latest treatment notes dated August 31, 2005, and the date the ALJ issued his decision denying benefits to plaintiff, on September 26, 2006. Such a conclusion is supported by plaintiff's medical records dated March 15, 2006, which were included in the record before the ALJ and indicate that plaintiff was easily distracted ("Conc-easily distracted") and had "impaired functioning levels." (See AR at 200, 203). See 20 C.F.R. § 404.970(b) ("The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision."). Further, although the ALJ determined that the "longitudinal record" established that "different health care providers consistently assess GAFs inconsistent with a disabling mental impairment" (AR at 26)[8], the new evidence considered by the Appeals

---

[7] At the February 21, 2006 hearing, plaintiff testified that he saw Dr. Heard every month. (AR at 232).

[8] The ALJ noted that mental health professionals had assessed plaintiff with a GAF score of 65 and above "during the period in question." (AR at 26). Plaintiff had been assessed with a GAF score of 65 in May 2004 (AR at 134), 70 in June 2004 (AR at 132), 60 in July 2004 (AR at 136), 65 in October 2004 (AR at 199), and 68 in November 2004 (AR at 172). A GAF score of 61 to 70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Diagnostic and Statistical Manual of Mental Disorders, supra note 3, at 34. The ALJ also noted that plaintiff's GAF assessments were inconsistent with plaintiff's allegations of significant functional limitations. (AR at 28).

10

Council indicated that plaintiff's highest GAF score in the past year – presumably between April 2006 and April 2007, when Dr. Heard completed her assessment – was 50, indicating serious symptoms and impairments consistent with disabling limitations.[9] (See AR at 209).

Second, because Dr. Heard was plaintiff's treating mental health physician, there is a reasonable possibility that the new evidence that plaintiff submitted would have changed the ALJ's decision in this case. Booz, 734 F.2d at 1380-81. The medical opinion of a treating physician is entitled to special weight. 20 C.F.R. § 404.1527; Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (the opinions of treating physicians should be given more weight than the opinions of doctors who do not treat the claimant); see Orn v. Astrue, 495 F.3d 625, 631-34 (9th Cir. 2007). If a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it will be given controlling weight. 20 C.F.R. § 404.1527. A finding that a treating physician's opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record, only means that the opinion is not entitled to controlling weight, not that it will be rejected. Social Security Ruling ("SSR")[10] 96-2p ("A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected."). The opinions rendered by treating physicians are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. Section 404.1527, such as the length of the treatment relationship, frequency of examination, and the nature and extent of the treatment relationship. SSR 96-2p; 20 C.F.R. § 404.1527(d)(2).

In this case, a reasonable probability exists that had the ALJ received Dr. Heard's Mental Impairment Questionnaire (Listings) and Medical Assessment of Ability To Do Work-Related

---

[9] Indeed, plaintiff's GAF score as of April 6, 2007 was 40. See supra n.3.

[10] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies. Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991). Although they do not have the force of law, they are nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

11

Activities (Mental), based on a longer treatment period, the ALJ might have given this new evidence greater weight than the opinions on which he relied in determining plaintiff's residual functional capacity. In his decision, the ALJ discussed the opinion of the consultative psychiatrist, Jason H. Yang, M.D., that plaintiff could focus adequately, follow one and two-part instructions, adequately remember and complete simple tasks, was able to tolerate the stress inherent in the work environment, maintain regular attendance and work without supervision, and his expectation that plaintiff would be able to "interact appropriately with supervisors, co-workers, and the public in the workplace." (See AR at 29, 172). Dr. Yang's assessment was based on a one-time psychiatric evaluation of plaintiff on November 9, 2004, before Dr. Heard began to treat plaintiff and nearly two years before the ALJ issued his decision denying benefits, and Dr. Yang had not reviewed any of plaintiff's medical or psychiatric records. (See AR at 169-70). The new evidence from Dr. Heard, however, provides a more recent assessment of plaintiff's functional capacity as affected by his mental impairments, based on a longer treatment period. Further, Dr. Heard is plaintiff's treating mental health physician and ordinarily Dr. Heard's opinion would be accorded greater weight than that of a non-treating physician. See 20 C.F.R. § 404.1527(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."); Orn, 495 F.3d at 631 (citing 20 C.F.R. § 404.1527); Lester, 81 F.3d at 833 ("The treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment."); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (stating that greater weight is given to a treating physician's opinion because the treating doctor "is employed to cure and has a greater opportunity to know and observe the patient as an individual."). Indeed, even if Dr. Heard's opinion was inconsistent with other

substantial evidence in the record and was not entitled to "controlling" weight, Dr. Heard's opinion would still be entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. Section 404.1527. See SSR 96-2p ("A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected."); Orn, 495 F.3d at 631-32.

Moreover, although the ALJ believed that Dr. Yang's assessment was consistent with "the current medical records," the ALJ nonetheless gave plaintiff "the benefit of the doubt" and adopted the previous ALJ's decision that plaintiff had the residual functional capacity to perform simple, unskilled, routine and repetitive tasks with minimal contact with others at all exertional levels, and concluded that plaintiff can perform simple work with only occasional contact with co-workers and no public interaction.[11] (See AR at 23, 29). This supports a conclusion that a more recent opinion from plaintiff's treating mental health physician, indicating more severe functional limitations, may have changed the ALJ's decision. Indeed, in his decision, the ALJ stated that plaintiff "fail[ed] to establish worsening of [his current] impairments" and, "[t]herefore, I adopt the prior [ALJ]'s decision regarding [plaintiff's] functional capacity" (AR at 29) – implicit in the ALJ's statement is the possibility that additional evidence indicating a worsening of plaintiff's impairments, such as Dr. Heard's opinion, might have changed the ALJ's decision. Furthermore, the hypothetical questions posed to the vocational expert as to whether plaintiff could perform occupations of rack loader, paint pourer and hand packager, were based in part on the previous ALJ's determination of plaintiff's residual functional capacity. (See AR at 30-31, 244-45). If the ALJ had the benefit of Dr. Heard's opinion regarding plaintiff's functional limitations – for example, that plaintiff had "marked" limitations in his ability to maintain concentration, persistence or pace, poor or no ability to understand, remember and carry out

---

[11] The ALJ also noted inconsistencies between the State Agency medical consultant's and the previous ALJ's determinations of plaintiff's functional limitations. (See AR at 23). Although the medical consultant determined that plaintiff had only mild difficulties in maintaining social functioning, concentration, persistence or pace (AR at 184), the previous ALJ decided that plaintiff had moderate difficulties in maintaining social functioning and mild-to-moderate difficulties in maintaining concentration, persistence or pace (AR at 40). The ALJ stated that it was "immaterial" whether he adopted the medical consultant's or the previous ALJ's opinion, but adopted the previous ALJ's decision regarding plaintiff's residual functional capacity. (AR at 23).

even simple job instructions, was completely unable to function independently outside the home, and his mental impairments would cause him to be absent from work for more than four days per month (see AR at 211-12, 214) – Dr. Heard's opinion might have affected the ALJ's hypothetical questions, the vocational expert's conclusion as to whether plaintiff could perform occupations existing in the national economy and, thus, the ALJ's ultimate disability determination.[12]

In light of the foregoing, the Court finds that the Appeals Council failed to identify sufficient reasons to reject Dr. Heard's opinion regarding the severity of plaintiff's functional limitations.

## C. Remand is Required to Remedy Defects in the ALJ's Decision

The choice of whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. McAlister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully. Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).

Here, the Court finds remand appropriate. On remand, the ALJ should consider plaintiff's residual functional capacity in light of Dr. Heard's opinion regarding plaintiff's functional limitations, as presented within the Mental Impairment Questionnaire (Listings) and Medical Assessment of Ability To Do Work-Related Activities (Mental). In the event the ALJ needs additional evidence or information regarding the opinion, the ALJ may request such information from Dr. Heard. See 20 C.F.R. § 404.1512(e)(1) (discussing procedure for requesting additional information from medical sources). The ALJ should then determine whether plaintiff has the residual functional capacity to perform work that exists in significant numbers in both the local and national economies.

///

---

[12] During his questioning of the vocational expert at the February 21, 2006 hearing, the ALJ stated, "I won't give a hypothetical based on [plaintiff]'s complaints that he can't leave the house and he can't be around people at all because, if I find that, I'll assume that he could not work in a competitive work environment." (AR at 245).

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS this action for further administrative proceedings consistent with this Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: May 30, 2008

                                                    /s/
                                    JENNIFER T. LUM
                                    UNITED STATES MAGISTRATE JUDGE